UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re
**SHONEY, LLC,**
    Debtor

Chapter 11
Case No. 16-13905-JNF

~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the "Motion of 691 Washington Street Acquisition, LLC for Relief from Stay" with respect to property located at 691 Washington Street, South Easton, Massachusetts (the "Lift Stay Motion"). Shoney, LLC (the "Debtor") filed a Response to the Lift Stay Motion through which it objected to the relief requested by 691 Washington Street Acquisition, LLC ("Acquisition, LLC"). The Court held hearings on the Lift Stay Motion on December 19, 2016 and on January 30, 2017. Neither party requested an evidentiary hearing.

**II. PROCEDURAL BACKGROUND AND FACTS**

The following procedural background is pertinent to a determination of the Lift Stay Motion. The Debtor filed a Chapter 11 petition on October 12, 2016. On the petition, the Debtor indicated that its case is a "single asset real estate" case, within the meaning of 11 U.S.C. § 101(51B).

1

The Debtor filed its Schedules and Statement of Financial Affairs on November 4, 2016.[1] On Schedule A/B: Assets – Real and Personal Property, the Debtor listed an ownership interest in real property located at 691 Washington Street, South Easton, Massachusetts (the "Property") with a fair market value of $500,000, but disclosed no ownership interests in any personal property, such as cash or cash equivalents, office furniture and equipment, or accounts receivable.

On Schedule D: Creditors Who Have Claims Secured by Property, the Debtor listed Acquisition, LLC as the holder of a disputed secured claim in the sum of $170,000. On Schedule D, the Debtor also listed other secured creditors with claims against the Property, including Sarah Welcome ("Welcome") with a disputed claim in the sum of $278,310.77; Tallage Lincoln LLC with a disputed claim in the sum of $26,100.36 relating to a tax lien;[2] and the Town of Easton with a claim in an unknown sum for real estate taxes.  On Schedule E/F: Creditors Who Have Unsecured Claims, the Debtor disclosed it had no creditors holding priority or general unsecured claims.  On Schedule G: Executory Contracts and Unexpired Leases, the Debtor disclosed it had no executory contracts or unexpired leases.

---

[1] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

[2] Tallage Lincoln LLC filed a proof of claim in which it asserted a total claim of $29,358.16 of which $28,437.33 was secured.  It attached to its proof of claim "Instrument of Assignment" pursuant to which the Town of Easton assigned its tax title to the Property.

2

In the Statement of Financial Affairs, the Debtor disclosed that it had no income from January 1, 2016 to the petition date, that it had no income in 2015 and that its income in 2014 totaled $4,470. Dana M. Chiles, the Debtor's Manager, executed a "Declaration under Penalty of Perjury" attesting that the information in the Debtor's Schedules was true and correct.

On November 23, 2017, Acquisition LLC filed its Lift Stay Motion seeking to foreclose its mortgage on the Property, asserting that the Debtor has no unsecured creditors, no equity in the Property, little or no income, and no means of reorganizing. Acquisition, LLC added that the case involves "nothing more than two 'two-party disputes' with the Debtor's two primary creditors [i.e., Acquisition, LLC and Welcome] that have both been the subject of well-advanced litigation in the state court," which resulted in findings against the Debtor.

In its Response, the Debtor admitted many of the allegations set forth in Acquisition, LLC's Lift Stay Motion, including that the Property is the only remaining property securing a Commercial Real Estate Promissory Note, dated March 4, 2013, in the principal sum of $2,160,000, which was executed by Dana M. Chiles, as President and Treasurer of Chiles Holdings, Ltd., in favor of BEE Investments, LLC ("BEE"), together with a Mortgage and Security Agreement granting BEE a first priority mortgage on the Property. The Debtor also admitted that Chiles Holdings, Ltd. defaulted under the Note and that, on June 14, 2013, it transferred title to the Property to the Debtor in violation of the loan documents. The Debtor further admitted that, on January 27, 2016, BEE assigned the Note and Mortgage on the Property to Acquisition, LLC.

The Debtor admitted that, on March 28, 2016, it, along with Chiles Holdings, Ltd., filed with the Suffolk County Superior Court a Complaint against Acquisition, LLC and BEE and a Motion for Temporary Restraining Order (the "TRO Motion")[3] to enjoin an upcoming foreclosure sale of the Property. The Superior Court denied the TRO Motion, finding that the Plaintiff failed to establish a substantial likelihood of success on the merits.

The Debtor also admitted that on September 1, 2016, Acquisition, LLC conducted a foreclosure sale of the Property and the successful bidder was Jack I. Smolokoff, a long-time attorney for Dana M. Chiles, for a purchase price of $386,000. The Debtor also admitted that the sale did not close because the notice of sale did not contain the book and page number where the assignment of the mortgage from BEE to Acquisition, LLC was recorded. The Debtor commenced its Chapter 11 case one day before the rescheduled foreclosure sale.

### III. ARGUMENTS OF THE PARTIES

In its Lift Stay Motion, Acquisition, LLC calculated its claim at $195,387.79, excluding attorneys' fees;[4] and asserted the amount due to Welcome on her secured claim, with post-judgment interest, exceeded $330,000. It also referenced the outstanding

---

[3] The grounds for the TRO Motion were 1) that the interest rate under the loan was usurious; (2) that the loan obligation had been satisfied in connection with a previous foreclosure sale; and (3) that service of notice of the foreclosure sale was defective.

[4] Acquisition, LLC subsequently recalculated its claim as $190,343.07, excluding attorneys' fees.

tax claims owed to Tallage Lincoln LLC and the Town of Easton, which are senior in priority to the mortgages. Acquisition, LLC sought relief from the automatic stay "for cause" under 11 U.S.C. § 362(d)(1), contending that the Debtor filed its petition in bad faith, as well as because the Debtor lacks equity in the Property and the Property is not necessary for an effective reorganization under 11 U.S.C. § 362(d)(2). In support of its Lifts Stay Motion, Acquisition, LLC submitted the affidavit of Welcome in which she indicated that she obtained a judgment against the Debtor in the amount of $278,310.77 from the Bristol County Superior Court in an action captioned Welcome v. Chiles Holdings, Ltd., et al. and that she obtained an execution in the sum of $289,847.86, that as of the date of the filing of the petition her claim exceeded $330,000, and that she supported Acquisition LLC's Lift Stay Motion.

In its response, the Debtor asserted that there is ample equity over and above the alleged amount of the claim of Acquisition, LLC, adding that adequate protection is being provided, that post-petition real estate taxes will be paid, and that the property is insured.

At the initial hearing on the Lift Stay Motion on December 19, 2016, counsel to Acquisition, LLC, on the one hand, represented that the Property is a 4,000 square foot commercial building with a single tenant, an affiliate of the Debtor, who is not paying rent. Counsel to the Debtor, on the other hand, asserted that the Debtor may owe Acquisition, LLC nothing and intended to object to its claim. Debtor's counsel also added that the value of the Property is $800,000, based upon a two-year old appraisal that recognized that the Property was required to conform to "its existing mixed use status,"

and that the Debtor's plan would be based upon a refinancing of the Property and objections to claims.

At the conclusion of the initial hearing, the Court afforded counsel to the Debtor an opportunity to conduct a deposition of a principal of Acquisition, LLC to ascertain how it calculated the amount of its claim. At the hearing held on January 30, 2017, however, counsel to the Debtor indicated that he had not conducted a deposition during the period between the initial and the continued hearing on the Lift Stay Motion.

At the January 30, 2017 hearing, counsel to Acquisition, LLC indicated that its claim, including interest but excluding attorneys' fees was $192,165.31, excluding $55,223.98 in attorneys' fees and charges. He further indicated that the secured portion of the claim of Tallage Lincoln, LLC, as the holder by way of an assignment of the Town of Easton's tax title, has priority over its claim.

At the January 30, 2017 hearing, counsel to the Debtor argued that the Debtor hoped to be able to obtain tenants and that within the next month or so there would be approximately $2,000 to $4,000 a month in monthly rental income that would permit the payment of quarterly fees to the U.S. trustee. Counsel to the Debtor reiterated the Debtor's plan to rent units in the Property and litigate the claim of Acquisition, LLC.

## IV. ANALYSIS

Based upon the allegations set forth in the Lift Stay Motion, reproduced above, most of which were admitted by the Debtor, as well as the representations and arguments made at the hearings, the Court concludes that Acquisition, LLC is entitled to relief from the automatic stay.

For purposes of 11 U.S.C. § 362(d)(2)(A) with respect to an assessment of the Debtor's equity in property, courts define equity as the difference between the property value and the total amount of liens against it. *See* First Agric. Bank v. Jug End in the Berkshires, Inc. (In re Jug End in the Berkshires, Inc.), 46 B.R. 892, 901 (Bankr. D. Mass. 1985); *see also* In re SW Boston Hotel Venture LLC, 449 B.R. 156, 176-77 (Bankr. D. Mass. 2011). The Court concludes that Acquisition, LLC satisfied its burden of establishing that the Debtor lacks equity in the Property. *See* 11 U.S.C. § 362(g)(1). The Debtor submitted no evidence by way of affidavit or otherwise to rebut Acquisition, LLC's calculation of its claim, which did not include attorney's fees. Its reliance on its state court complaint to rebut Acquisition, LLC's claim is woefully insufficient where the Suffolk County Superior Court determined that the Debtor and its co-plaintiffs had failed to establish a substantial likelihood of success on the merits.

With respect to the burden of proof under 11 U.S.C. § 362(d)(2)(B), the Court rules that the Debtor failed to sustain its burden that a reorganization is in prospect. *See* 11 U.S.C. § 362(g)(2); United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365 (1998).[5] As this Court observed in In re BB Island Capital, LLC, 540 B.R. 16 (Bankr. D. Mass. 2015),

---

[5] In Timbers, the Supreme Court stated:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is "necessary to an effective reorganization." *See* § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as

7

> [T]he standard articulated in Timbers of Inwood, imposes an increasing burden of proof on the debtor regarding the viability of reorganization as a means of balancing a debtor's need to reorganize against the delay, and consequent harm, imposed on creditors by the stay. Initially the balance favors the debtor in possession. But the burden of proof rapidly shifts in favor of secured creditors, requiring a heightened showing by the debtor of its chances for reorganization. Immediately after the case is filed, a debtor in possession opposing stay relief may offer a "less strenuous" showing of "a reasonable possibility of successful reorganization within a reasonable time." *During this stage, the debtor sustains the burden of proof by offering sufficient evidence that a successful reorganization within a reasonable time is "plausible." The standard is low, requiring the debtor only to present evidence that is "superficially worthy of belief" that it is capable of producing a plan. The terms of the plan can be obscure and vague, as long as it is plausible that a successful reorganization may occur.* The bankruptcy court's mandate is to balance the reasonableness of the delay borne by the secured creditors against the debtor's ability to formulate a plan. Immediately after the case is filed, if the debtor presents any evidence that a confirmable plan is plausible, the balance favors the debtor and the creditors are expected to wait while the debtor attempts to craft a plan. Holly's, 140 B.R. at 701 [Sumitomo Trust & Banking Co., Ltd. v. Holly's Inc. (In re Holly's, Inc.), 140 B.R. 643 (Bankr. W.D. Mich. 1992)].

In re BB Island Capital, LLC, 540 B.R. at 22-23 (emphasis supplied) (quoting In re Souza, No. 12–13341, 2012 WL 8441318, at *3 (Bankr. E.D. Ca. Nov. 26, 2012).

---

> many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." In re Timbers of Inwood Forest Associates, Ltd., 808 F.2d 363, 370–371 nn. 12–13 (5th Cir.1987), and cases cited therein. The cases are numerous in which § 362(d)(2) relief has been provided within less than a year from the filing of the bankruptcy petition. And while the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan, *see* 11 U.S.C. §§ 1121(b), (c)(2), even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief.

484 U.S. at 375–76 (footnotes omitted).

In the instant case, the Debtor has a single asset encumbered by liens exceeding the fair market value of the Property as reported by the Debtor on Schedule A/B. The Court rejects the Debtor's assertion that the Property, whose only tenant is an insider of the Debtor, is worth $800,000 based on a two-year old appraisal because the Debtor indicated that the fair market value of the Property was $300,000 less on its Schedule A/B and because the successful bidder at the flawed foreclosure sale offered $386,000. Moreover, the Debtor's income is insufficient to suggest that refinancing the Property to satisfy the existing secured debt is feasible, and the Debtor produced no evidence in the form of an affidavit of any efforts to obtain such refinancing. Finally, litigation as to the validity of Acquisition, LLC's claim, which may take months, if not years in the event of an appeal, to finalize, is insufficient to establish that a plan of reorganization is in prospect. *See* Timbers, 484 U.S. at 375-76. Thus, even though the Chapter 11 case is in its early stages, the Debtor's contentions as to its reorganization plans are speculative and implausible.

**V. CONCLUSION**

As the United States Court of Appeals for the First Circuit observed in Grella v. Salem Five Cent Savs. Bank, 42 F.3d 26 (1st Cir. 1994),

> The limited grounds set forth in the statutory language, read in the context of the overall scheme of § 362, and combined with the preliminary, summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate.

Id. at 32. The Court concludes that Acquisition, LLC has established a colorable claim to the Property. Accordingly, the Court shall enter an order granting the Lift Stay Motion.

By the Court,

*[signature: Joan N. Feeney]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 3, 2017